STATE OF MAINE
CUMBERLAND, SS.

STATE OF MAINE
Cumberand ss. Clerk's Office

SEP 29 2015

RECEIVED

SUPERIOR COURT
Docket No. CV-2014-372[1]

DONALD GREY LOWRY,

       Plaintiff,

    v.

JAMES C. BEARDSLEY & JCB
CORPORATION, P.A.,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

Plaintiff Donald G. Lowry moves for summary judgment on Count I of his

Complaint for breach of contract against Defendants James C. Beardsley and JCB

Corporation, P.A. Mr. Lowry argues summary judgment is warranted because there is no

dispute that the full payments required under the contract between Messrs. Beardsley and

Lowry have not been made. Defendants respond that summary judgment should not be

granted because there is at least a disputed factual issue as to how the payments under the

Agreement should be characterized. As discussed in greater detail below, the Court

denies Mr. Lowry's motion because there are genuine issues of material fact.

**I.    Background**

    A. <u>The Agreement and Payments Thereunder</u>

Mr. Lowry entered into a contract with Mr. Beardsley on September 3, 2013

(hereinafter, the "Agreement"). (Pl.'s S.M.F. ¶ 1.) Mr. Lowry drafted the Agreement.

(Def.'s A.S.M.F. ¶ 16.) Pursuant to paragraph 1 of the Agreement, Mr. Lowry

transferred 100% of the stock in Lowry & Associates Attorneys, P.A. (the "Law Firm" or

"Firm") to Mr. Beardsley. (*Id.* at ¶ 3.) Pursuant to paragraph 5(a), the Firm was to pay

---

[1] On July 21, 2015, this Court consolidated CV-2014-372 with CV-2014-390.

1

Mr. Lowry $5,000 on the last day of each month for the period of September 2013 through December 2015. (*Id.* at ¶ 5.) Specifically, the Agreement provides that "Lowry shall be compensated as follows:

> a. The corporation [i.e. the Law Firm] agrees to pay monthly the sum of $5,000.00 to Lowry on the last day of each month for the period September, 2013 through December, 2015.

(Pl.'s Ex. A, the Agreement, ¶ 5(a).) The Law Firm paid Mr. Lowry $5,000 at the end of September, October, November, and December 2013. (*Id.* at ¶ 6.) Subsequently, all monthly payments to Mr. Lowry have been in the amount of $5,000 minus certain withholdings for tax purposes pursuant to state and federal employment law. (*Id.* at ¶ 7; Def.'s O.S.M.F. ¶ 7.)

Pursuant to paragraph 5(b) of the Agreement, the Law Firm is obligated to pay Mr. Lowry 8% of the total fees in excess of $850,000 received by the Firm for the year ending December 31, 2014, payable no later than the end of January 2015. (Pl.'s S.M.F. ¶ 8.) Specifically, the Agreement provides that Mr. Lowry shall be compensated as follows:

> b. The corporation agrees to pay Lowry, in addition to the amount stated in paragraph a above, 8% of the total fees in excess of $850,000.00 received by the firm in each of the years ending December 31, 2013, December 31, 2014 and December 31, 2015, payable no later than the end of the following January.

(Agreement ¶ 5(b).) In the payment Mr. Lowry received pursuant to paragraph 5(b), the Law Firm withheld money as if Mr. Lowry were an employee of the Law Firm. (*See* Pl.'s S.M.F. ¶ 9; Def.'s O.S.M.F. ¶ 9.)

Paragraph 10 of the Agreement provides that in the event the Law Firm fails to make any of the payments required, Mr. Beardsley shall have 30 days written notice of

2

the default to cure and bring the Firm into full compliance. (Pl.'s S.M.F. ¶ 11.) On May 29, 2014, Lee Bals, counsel for Mr. Lowry, sent Roy Pierce, then counsel for Mr. Beardsley, an email declaring Mr. Beardsley in breach of the Agreement. (*Id.* at ¶ 12.) On June 9, 2014, Mr. Bals sent Mr. Pierce a letter advising that Mr. Beardsley was in default of the Agreement and providing an opportunity to cure. (*Id.* at ¶ 13.) Since June 9, 2014, Mr. Beardsley—through JCB Corporation, P.A.—has continued with the same payment practices complained of by Mr. Lowry. (*See id.* at ¶ 14.) On June 10, Mr. Pierce sent a letter to Mr. Bals requesting he identify what "other things" were being claimed as grounds for the alleged default. (Def.'s A.S.M.F. ¶ 39.) Mr. Bals did not respond to the request for further information. (*Id.* at ¶ 40.)

## B. Disputed Factual Contentions Regarding the Alleged Intent of the Agreement

Mr. Beardsley asserts that in drafting the agreement, Mr. Lowry ensured that all payments to him were to come from the Law Firm, not Mr. Beardsley personally. (4/1/15 Beardsley Aff. ¶ 7.) He claims that the two discussed how this would result in Mr. Lowry's payments being tax-deductible expenses for the Law Firm. (*Id.*) This, Mr. Beardsley claims, was part of the reason he provided a personal guarantee of the Firm's obligations to Mr. Lowry. (*Id.*) Mr. Beardsley also asserts that he understood the payments under the Agreement were for services rendered by Mr. Lowry, not as a capital contribution based on a document included with the initial drafts of the Agreement, which states, "The provisions for transfer of shares of the corporation make it possible for [Mr. Beardsley] to attain ownership without the necessity of making any capital contribution...." (*Id.* at ¶ 8 and Exhibit 1 attached thereto.) In addition, Mr. Beardsley asserts that Mr. Lowry characterized the payments he would be receiving as being

3

derived from profits and understood that profits could vary year to year, preventing any sum certain of amounts to be paid. (*Id.* at ¶ 9.) Mr. Beardsley further asserts that Mr. Lowry stressed that the Firm had no market value before entering the Agreement and supported this assertion with a personal financial statement and handwritten notes evidencing this assertion. (*Id.* at ¶ 11 and Exhibit 2 attached thereto.)

Mr. Lowry counters that permitting the payments to come from the Law Firm was offered as a courtesy to Mr. Beardsley so he could make payments from the Firm, rather than his personal funds. (4/9/15 Lowry Aff. ¶ 5.) He also asserts that he did not discuss the tax implications of the Agreement with Mr. Beardsley during the negotiations thereof. (*Id.* at ¶ 6.) Mr. Lowry further claims that the parties understood Mr. Beardsley was paying Mr. Lowry for the stock of the Firm and that it was never intended for him to be employed by the Firm after the sale. (*Id.* at ¶ 7.) He also downplays the relevance of the pre-Agreement document alluded to by Mr. Beardsley and contends that at the time, various methods of payment were under consideration, which was ultimately resolved in the Agreement. (*Id.*) As to the valuation that the Firm had no market value, Mr. Lowry asserts that he always thought the Firm had great potential because of good will, brand recognition, and reputation, but was concerned an outside appraisal would be negative in light of a low recent earnings history. (*Id.* at ¶ 8.)

After the Agreement was executed, Mr. Beardsley claims Mr. Lowry began questioning the characterization of the payments. (4/1/15 Beardsley Aff. ¶13.) This questioning allegedly stemmed from conversations with his accountant about tax implications and was designed to make the Agreement more beneficial to Mr. Lowry. (*Id.* at ¶ 14.) In an apparent attempt at compromise, Mr. Beardsley asserts that he told Mr.

4

Lowry the Firm would pay his wages with a 1099, as an independent contractor. (*Id.*) Shortly after this discussion, Mr. Lowry allegedly changed his mind and claimed that he considered 100% of the payments to be capital payments. (*Id.* at ¶ 16.) Mr. Lowry responds that he never changed his attitude or position with respect to the nature of the payments under the Agreement and that it was only after a period of time following the execution of the Agreement that he learned Mr. Beardsley proposed to consider the payments as compensation for services rendered. (4/9/15 Lowry Aff. ¶ 9.)

Mr. Beardsley also claims that on October 21, 2013, Mr. Lowry told him he was going to sue the Firm and Mr. Beardsley personally. (4/1/15 Beardsley Aff. ¶ 17.) On November 12, 2013, the Firm's bookkeeper allegedly discovered that someone had deleted two entries from the Firm's books totaling $30,000. (*Id.* at ¶ 18.) By process of elimination, Mr. Beardsley believes it was Mr. Lowry. (*See id.*) Mr. Lowry denies this allegation. (4/9/15 Lowry Aff. ¶¶ 12-13.)

In January 2014, the issue of how to characterize the payments to Mr. Lowry came to a head. (Pl.'s S.M.F. ¶ 30.) Mr. Lowry's accountant proposed a compromise, whereby the payment would be characterized as W2 wages and the first $20,000 in payments be considered payment in full for the stock of the Firm, with all remaining payments to be considered wages. (*Id.* at ¶ 31.) In a January 29, 2014 email to Mr. Beardsley, cc'ing Mr. Bouffard—an accountant—Mr. Lowry responded that:

> Although I have no doubt that you are misdirected and that your position will never stand any scrutiny by the IRS, I think that starting a war over this relatively inconsequential matter is ridiculous. Therefore I will just give in. Let's consider the payments in 2013 as payment for the stock and all succeeding payments as salary. Please have Joan deduct taxes before making the January payment to me. You can give me a W-2 at the end of the year. When I pass away…[Elizabeth Lowry] will then be your

5

employee. I guess that your basis in the stock will be $20,000 as absurd as that seems.

(Ex. 5 to Def.'s A.S.M.F.) (emphasis added).

### C. Mr. Lowry's Firm Related Activities Following the Execution of the Agreement

Mr. Lowry asserts that he has not performed any employment related activity for the Law Firm since October 2013. (3/11/15 Lowry Aff. ¶ 7; *see also* 9/11/14 Beardsley Aff. ¶¶ 29-30 (stating that Mr. Lowry has done no client related or firm management work since January 2014).) Mr. Beardsley responds that Mr. Lowry has conducted work on behalf of the Law Firm subsequent to October 2013. (4/1/15 Beardsley Aff. ¶¶ 30-32.) Specifically he alleges that between September 2013 and January 2014, Mr. Lowry was asked to: maintain a log of settled cases and income projections, review the accuracy of data entry for new cases, write a detailed history of the Law Firm that could be used for marketing and development purposes, and participate in the Law Firm's employee goals project. (*Id.* at ¶ 30.) Mr. Beardsley contends that he only stopped providing assignments to Mr. Lowry after a February 3, 2014 voicemail from Mr. Lowry's counsel instructing him not to communicate with Mr. Lowry. (*Id.* at ¶ 31 and Exhibits 7 & 8 thereto.) Nevertheless, Mr. Beardsley asserts that Mr. Lowry conducted work on behalf of the firm—without Mr. Beardsley's instruction, direction or request—as evidenced by a phone call Mr. Lowry received from an upset business owner in Massachusetts in response to a letter sent by the Law Firm, and signed by Mr. Lowry, on June 21, 2014. (*Id.* at ¶ 32 and Exhibit 9 thereto.)

6

### D. The Florida Court Proceedings

While the Agreement negotiations were proceeding, Mr. Lowry was the defendant in a Florida court action brought by a creditor. (Def.'s S.M.F. ¶ 41.) On August 27, 2013, Mr. Lowry was provided with a proposed final judgment in that case against him in the amount of $128,948.09, plus interest. (*Id.* at ¶ 42.) Mr. Beardsley asserts that he had a number of discussions about the immanency of the judgment with Mr. Lowry and, in those discussions, Mr. Lowry explained that it was important that his payments from the Firm be for work performed and not payments from Mr. Beardsley. (4/15/15 Beardsley Aff. ¶ 39.) Mr. Beardsley also claims that Mr. Lowry pressured him into signing the Agreement by, among other things, stating that he would terminate Mr. Beardsley if he would not sign. (*Id.* at ¶ 40; *see also* Exhibit 14 thereto, a memo from Mr. Lowry to Mr. Beardsley stating that if he cannot reach an Agreement with Mr. Beardsley, Mr. Lowry has "in mind a termination package for you if you decide to depart.") Mr. Lowry denies these allegations. (4/9/15 Lowry Aff. ¶ 17.)

On September 11, 2013, final judgment was entered against Mr. Lowry by the Florida court in the amount of $128,948.09, plus interest. (Def.' S.M.F. ¶ 46.) Pursuant to the judgment, Mr. Lowry was required to submit a fact information sheet, which required information including Mr. Lowry's employment status, wages, other income, real estate value, motor vehicles, and whether Mr. Lowry had transferred any asset valued at greater than $100 during the past year. (*Id.* at ¶ 47.) Mr. Beardsley suspects that Mr. Lowry reported the Firm's value as zero and stated that the payments he received from the Firm were wages, not capital payments. (*Id.*)

7

## II.  Discussion

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely...of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 1144 (Me. 1995).  Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653.  A material fact is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact finder to choose between competing versions of the fact.  *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774.  In ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the non-moving party.  *See Perkins v. Blake*, 2004 ME 86, ¶ 7, 853 A.2d 752

### A.  Whether the Defendants Breached the Agreement by Withholding Money from the Payments Due Mr. Lowry Under the Agreement

Mr. Lowry argues that summary judgment is warranted because there is no disputed issue of material fact that the Defendants breached the Agreement by failing to pay him all of the monies he was entitled to thereunder.  Specifically, the Defendants paid the agreed upon $5,000 for the first four months of the Agreement, but thereafter withheld monies from the $5,000 payment.  In addition, the Defendants withheld money for taxes from the annual payments due to Mr. Lowry.  The monies withheld were allegedly for employee taxes to the state.  Mr. Lowry argues that this was improper because under state law, employees must be paid at regular intervals not to exceed 16 days, not a monthly basis.  *See* 26 M.R.S. § 621-A (2014).

8

Defendants respond that summary judgment is not warranted because there are material facts in genuine dispute. Specifically, Defendants argue that there is at least a dispute as to whether the $5,000 monthly payments were for wages, as opposed to capital payments for the purchase of the Firm's stock. This is because every reference to payments in the Agreement is for the Firm—not Mr. Beardsley—to pay Mr. Lowry. As a result, Mr. Lowry's interpretation results in the absurdity of the Firm buying itself and retaining its stock as treasury shares. Furthermore, an interpretation in which the payments to Mr. Lowry were for wages is consistent with his own market valuation of the firm as having no value.

The Defendants further point out that Mr. Lowry—an experienced attorney—drafted the agreement and could have included provisions regarding more definite terms of payment had he wished. Instead, he deliberately chose not to characterize the payments as capital for the acquisition of the Firm. Defendants argue that this position is consistent with his attempt to minimize the potential for an attachment against him stemming from the Florida action. More importantly, Defendants point out that in January 2014, Mr. Lowry agreed in writing to have all future payments characterized as wages and provided Mr. Beardsley a W-4 to compute the withholding amounts. (*Id.* (citing Def.'s A.S.M.F. ¶¶ 30-33).) This writing, Defendants claim, constitutes an amendment to the Agreement and removes any doubt as to the proper characterization of the payments.

The Defendants also argue that 26 M.R.S. § 621-A does not alter Mr. Lowry's status as an employee because the statute does not apply to Mr. Lowry as he is a salaried

9

employee and, even if it did apply, it would simply create a liability under the statute for the Firm, it would not render the Agreement void or transform the payments made.

The Defendants then contend that there is a material dispute as to whether Mr. Lowry was treated like an employee by the Firm. They dispute Mr. Lowry's claim that he was not provided access to the Firm's records and point out instances in which Mr. Lowry allegedly carried out work for the Firm. They also argue that the Agreement does not require Mr. Lowry to provide active legal services. Instead, he must remain "available for consultation and advice 'to the extent requested by Beardsley.'" (Agreement ¶ 2.) Defendants further contend that they had legitimate reasons for minimizing Mr. Lowry's role in the firm such as his hostile attitude, and alleged deletion of two entries from the Firm's books.[2]

Mr. Lowry replies that because the manner in which the Agreement pays Mr. Lowry would violate Maine's comprehensive statutes and regulations governing employment law practice if the payments were treated as wages to an employee, the Court should interpret the Agreement as making capital payments. In support, Mr. Lowry attacks the Defendants' characterization of him as an exempt, salaried employee because he was not permitted to perform any work for the Firm. Mr. Lowry also asserts, for the first time, that the Defendants violated 26 M.R.S. § 665 requiring Maine employers to provide each employee, with each payment of wages, "a statement that clearly shows the date of pay period, the hours, total earnings and itemized deductions." 26 M.R.S. § 665 (2014).

---

[2] The Defendants also raise two additional arguments that are premised on the assumption that their interpretation of the Agreement is correct. Namely, that there are disputed issues of fact about whether the Defendants' decision to withhold taxes from Mr. Lowry's payments constituted a breach of the Agreement because tax law requires such monies to be withheld, and whether the notice of default was effectual because there was no default under the Agreement to trigger said notice.

10

Mr. Lowry further replies that the Agreement's provision regarding Elizabeth Lowry establishes that the payments were not intended to be wages for Mr. Lowry as an employee. This is because in the event Mr. Lowry predeceases his spouse, she would become entitled to the payments. Elizabeth Lowry, however, is clearly not an employee of the Firm. Mr. Lowry also questions what would happen, under the Agreement, if he quit as an "employee." Would the payments cease? Finally, Mr. Lowry argues that the discussion of the Florida foreclosure proceeding is irrelevant to the question of whether Mr. Lowry is an employee of the Firm or whether Defendants breached the agreement. (*Id.* at 5-6.)

Here, when viewed in the light most favorable to the Defendants, there is at least a genuine dispute of material fact regarding the proper characterization of the payments to Mr. Lowry and/or Elizabeth Lowry under the Agreement. This is because the payment language in the Agreement does not explicitly characterize the payments as capital contributions—or employee wages. (*See* Agreement ¶¶ 5(a), (b), (c).) In addition, the Defendants—primarily through the affidavits of Mr. Beardsley—have introduced evidence that, when viewed in the light most favorable to the Defendants, indicates the questioned payments were intended to be treated as employee wages.[3] (*See* 4/1/15 Beardsley Aff. ¶¶ 7-8 (Mr. Lowry allegedly ensured Mr. Beardsley all payments would come from the Law Firm, would be tax deductible to the Firm, and were for services performed); ¶ 11 (Mr. Lowry allegedly communicated that the Firm had no market value

---

[3] Certain extrinsic evidence regarding the parties' intent when entering the Agreement is admissible because the Agreement does not contain an integration clause. *See Brown Dev. Corp. v. Hemond*, 2008 ME 146, ¶¶ 13, 17, 956 A.2d 104 (The application of the parol evidence rule is contingent on an initial finding that the contract at issue is integrated, whether a contract is integrated is a question of law); *see also Rogers v. Jackson*, 2002 ME 140, ¶ 10, 804 A.2d 379 ("As a general rule parol evidence of additional terms is admissible to supplement a partially integrated written agreement if the additional terms are consistent with the writing.").

11

supporting an interpretation that the payments were for wages); ¶¶ 13-14 (Mr. Lowry allegedly began questioning the characterization of the payments only after the Agreement was executed indicating a dissatisfaction with the prior characterization that continues in this litigation); ¶¶ 30-32 and Exhibit 9 thereto (Mr. Lowry was asked to perform work between September 2013 and January 2014 and allegedly undertook legal work under the Firm's letterhead on June 21, 2014); Ex. 5 to Def.'s A.S.M.F. (Mr. Lowry emails Mr. Beardsley and agrees to consider the payments in 2013 as payments for the stock of the Firm and all succeeding payments as salary); 4/1/15 Beardsley Aff. ¶¶ 39-42 (Mr. Lowry allegedly explained that having his payments come from the Firm would help him in dealing with creditors in the Florida action).)

This remains the case despite the Agreement's alleged violation of 26 M.R.S. § 621-A. That statute provides that every employer must pay in full all wages earned by each employee at regular intervals not to exceed 16 days. 26 M.R.S. § 621-A(1). Section 621-A, however, does not apply to "salaried employees," 26 M.R.S. § 623, which are defined as an employee "who works in a bona fide executive, administrative or professional capacity and whose regular compensation, when converted to an annual rate, exceeds 3000 times the State's minimum hourly wage...." 26 M.R.S. § 663(3)(K) (2014).

When viewed in the light most favorable to the Defendants, the Court cannot say that Mr. Lowry does not qualify as a salaried employee as a matter of law. (*See* Agreement ¶ 2 (discussing Mr. Lowry's agreement to be available for consultation and advice as well as his promise not to perform legal work for any other law firm or legal related business).) Furthermore, even if the statute applied and the Defendants were

12

found in violation thereof, it would not mean ipso facto that the Agreement intended to characterize the payments to Mr. Lowry as capital payments. Instead, it would simply constitute evidence that this was the parties' intent. Accordingly, genuine issues of material fact exist that preclude the Court from granting Mr. Lowry's motion for summary judgment.

### III.    Conclusion

The Court **denies** Mr. Lowry's motion for summary judgment because, when viewed in the light most favorable to the Defendants, there is at least a genuine issue of material fact regarding the proper characterization of the payments under the parties' Agreement.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: September 24, 2015

Roland A. Cole, Justice
Maine Superior Court

13

DONALD G LOWRY VS JAMES C BEARDSLEY ET AL  CONS WITH CV14-390
UTN:AOCSsr  -2014-0070451                        CASE #:PORSC-CV-2014-00372
--------------------------------------------------------------------------

01 0000003412          BALS, LEE
     ONE CANAL PLAZA SUITE 600 PORTLAND ME 04101-4035
     F       DONALD GREY LOWRY                      PL        RTND    08/19/2014

02 0000009024          PELLEGRINI, ANTHONY D
     84 HARLOW ST PO BOX 1401 BANGOR ME 04402-1401
     F       JAMES C BEARDSLEY                      DEF       RTND    09/11/2014
     F       JCB CORPORATION PA                     PII       RTND    09/11/2014

STATE OF MAINE
Cumberland, ss. Clerk's Office

JUL 21 2015

RECEIVED

STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
LOCATION: Portland
Docket No. CV-14-372

)
DONALD GREY LOWRY, )
)
   Plaintiff, )
)
v. )
)
JAMES C. BEARDSLEY & JCB )
CORPORATION, P.A., )
)
   Defendants. )

**ORDER ON PLAINTIFF'S
EMERGENCY MOTION FOR
APPOINTMENT OF A RECEIVER**

Plaintiff Donald Grey Lowry moves on an emergency basis for the appointment of a receiver to manage the business of Lowry & Associates, P.A. on an interim basis. Plaintiff supports his motion with an affidavit and exhibits attached thereto. Defendants James C. Beardsley and JCB Corporation, P.A. oppose Plaintiff's motion and support their opposition with affidavits from Mr. Beardsley and JCB Corp's bookkeeper, Joan Kelly.

For the reasons discussed below, the Court **denies** Plaintiff's emergency motion for appointment of receiver.

## I. Factual Background

Plaintiff is the founder and former sole shareholder of the law firm Lowry & Associates, P.A. (the "Firm"). (Lowry Aff. ¶ 3.) In the late 2000s, defendant James C. Beardsley became an employee of the Firm. (*Id.* at ¶ 4.) On September 3, 2013, Plaintiff sold his ownership interest in the Firm to Mr. Beardsley pursuant to a written agreement (hereinafter, the "Agreement"). (*Id.* at ¶ 5 and Exhibit A thereto, the Agreement.) Plaintiff asserts that the intent of the Agreement was to fairly compensate Plaintiff for his

1

ownership interest in the Firm and his continuing services to the Firm. (Lowry Aff. ¶ 6 (quoting Exhibit A, p. 1).) Under the terms of the Agreement, Plaintiff transferred 100% of his stock in the Firm to Mr. Beardsley. (Agreement, 1 ¶ 1.) In exchange, Plaintiff received the following pertinent consideration: (1) the monthly sum of $5,000 on the last day of each month for the period September, 2013 through December, 2015; (2) 8% of the total fees in excess of $850,000.00 received by the Firm in each of the years ending December 13, 2013, December 31, 2014 and December 31, 2015, payable no later than the end of the following January; (3) the retention of the Firm's business related perks and benefits which Plaintiff has heretofore enjoyed including use of an automobile for business related and personal use within the State of Maine (to be replaced as necessary) and the use of an office, office supplies and equipment, and access to staff assistance for firm business related purposes to the same extent as in the past. (*Id.* at pp. 2-3, ¶¶ 4-5.)

Plaintiff asserts that Mr. Beardsley breached the Agreement by: 1) failing to pay the full $5,000 per month agreed to; 2) freezing Plaintiff out of the practice; 3) changing the locks of the office building to cut-off Plaintiff's access; 4) preventing Plaintiff from accessing the Firm's books, records, and staff; 5) denying Plaintiff internet access and preventing him from reading firm e-mail; 6) shutting off Plaintiff's office cell phone; and 7) cancelling his Firm credit card. (Lowry Aff. ¶¶ 8-9.) Plaintiff also asserts that in the weeks before he filed the motion, the Firm suffered damage due to flooding. (*Id.* at ¶ 10.) Finally, Plaintiff contends that there is an ongoing dispute between himself and Mr. Beardsley. (*Id.* at ¶ 11.) Part of that dispute is based on Plaintiff's belief that Mr. Beardsley is irreparably harming the Firm, withholding money from him, and damaging the Firm's reputation. (*Id.*)

2

Defendants contend that they have paid Plaintiff $5,000 for each month, beginning with September 2013, through the present. (Beardsley Aff. ¶ 7.) The first four payments were allegedly made without withholdings, whereas the subsequent payments were made subject to withholding. (Beardsley Aff. ¶8; Affidavit of Joan Kelly, bookkeeper for Defendant JCB Corp. ¶¶ 6-8.) Mr. Beardsley asserts that the decision to characterize the payments to Plaintiff as wages subject to withholding was first suggested by Plaintiff's accountant in January 2014 and was consistent with the parties' pre-acquisition understanding that payments to Plaintiff would be expenses of the Firm. (Beardsley Aff. ¶¶ 9-11.) In a January 29, 2014 email, Plaintiff wrote that he did not want to start a war over this matter, considered it relatively inconsequential, and therefore gave in to Mr. Beardsley's interpretation. (Exhibit 1 to Beardsley Aff.) Consistent with this representation, Plaintiff filled out a W-4 form to the Firm. (Exhibit 3 to Beardsley Aff.)

With regard to business perks, Mr. Beardsley contends that Plaintiff was provided with the use of an automobile. (Beardsley Aff. ¶¶ 15.) He further claims that until shortly before the motion was filed, Plaintiff was provided with the use of an office, office supplies and equipment, and access to staff assistance for Firm business. (*Id.* at ¶ 16.) However, on August 13, 2014, Mr. Beardsley alleges that the building in which the Firm has its offices became flooded and unusable. (*Id.* at ¶ 17.) He contends that he asked the landlord of the building, who happens to be the Plaintiff, to remediate the damages. (*Id.* at ¶¶ 18-19.) Mr. Beardsley further contends that Plaintiff refused to remediate the damages and thereby breached the Lease between the Firm and Plaintiff. (*Id.* at ¶¶ 19-21.) Due to this alleged breach, Mr. Beardsley declared in writing that he

3

was going to find new office spaces for the Firm. (*Id.* at ¶ 21.) Mr. Beardsley thereafter filed a separate lawsuit against Plaintiff for breach of contract. (*Id.* at ¶ 22.) Mr. Beardsley then asserts that through late August 2014, he allowed Plaintiff unfettered access to the building. (*Id.* at ¶ 26.) After August 26, 2014, he allowed Plaintiff unfettered access to the building during office hours and access after hours with notice to Mr. Beardsley. (*Id.* at ¶ 27.) The access limitations were purportedly because Plaintiff insisted on leaving the building unlocked and the windows open to air out the building after the flood. (*Id.*) Mr. Beardsley was opposed to this because they had experienced vandalism in the recent past. (*Id.*) Mr. Beardsley also asserts that Plaintiff used his access to the building to remove personal items therefrom. (*Id.*)

Regarding Plaintiff's access to the Firm's books and records, Mr. Beardsley contends that he denied Plaintiff access thereto pursuant to paragraph 2 of the Agreement, which provides, in pertinent part, that Mr. Beardsley "agrees to assume the duties of Managing Attorney of the [Firm] and shall have primary responsibility for the management of the firm including all issues involving the firm operations[.]" (Agreement, pp. 1-2, ¶ 2.) He further asserts that nothing in the Agreement guarantees Plaintiff access to the books and records of the Firm. (Beardsley Aff. ¶ 25.) Moreover, Defendants assert that Plaintiff has no need to access the Firm's books and records because he has not done any client related work for the Firm or provided any management related work since January 2015. (*See id.* at ¶¶ 29-30.) Finally, Mr. Beardsley asserts that he anticipates 2014 will be the most profitable year for the Firm since Mr. Beardsley joined. (*Id.* at ¶ 32.)

4

## II.    Argument

Plaintiff asserts that a receiver is necessary because the parties are deadlocked with respect to the management and operation of the Firm and Plaintiff believes Mr. Beardsley's current management is causing irreparable harm to the Firm. Plaintiff requests a receiver be appointed on an interim basis to manage the day-to-day operation of the Firm pending resolution of the present dispute. He requests that the receiver be compensated for his work by the Firm.

Defendants respond that although Plaintiff cited no authority in support of his request for a receiver, the appointment would be governed by 13-C M.R.S. § 781. Defendants contend that pursuant to that statute, the Court may appoint a custodian in a proceeding brought by a shareholder when the directors are deadlocked in the management of corporate affairs, the shareholders are unable to break the deadlock, and either the deadlock threatens or has caused irreparable injury to the Firm, or the directors are acting fraudulently and may cause irreparable injury to the firm. 13-C M.R.S. § 781(1). Defendants argue that Plaintiff's request fails because: 1) he is not a shareholder of the Firm; 2) he cannot establish that the directors of the Firm are deadlocked because Plaintiff has no authority to manage the Firm; 3) there are no allegations that Mr. Beardsley acted fraudulently; and 4) there is no evidence of irreparable injury to the Firm. Defendants also argue that Plaintiff has no legal claim to participate in the business of the Firm because the Agreement does not give Plaintiff said right. Indeed, while the Agreement anticipates a plan that allows the Firm to continue to benefit from Plaintiff's services, it squarely places the duties of managing the Firm with Mr. Beardsley.

Pursuant to 13-C M.R.S. § 781, the Court may appoint one or more persons to be custodians or, if the corporation is insolvent, to be receivers of and for a corporation when it is established that: A) the directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the corporation is threatened or being suffered; or B) the directors or those in control of the corporation are acting fraudulently and irreparable injury to the corporation is threatened or being suffered. 13-C M.R.S. § 781(1). Appointment of a receiver is a matter within the discretion of the trial court. *Bates v. Dep't of Behavioral & Developmental Servs.*, 2004 ME 154, ¶ 86, 863 A.2d 890 (citing *Dep't of Envtl. Protection v. Emerson*, 563 A.2d 762, 767 (Me. 1989)).

Here, the Court denies Plaintiff's motion to appoint a receiver because he has not established that Defendants' management of the Firm is causing irreparable damage. Indeed, the primary evidence Plaintiff has presented on this point is his own speculation that Mr. Beardsley's management is causing irreparable harm to the Firm. While not disproved, this speculation is countered by Mr. Beardsley's assertion that the Firm is having a very profitable year. In addition, while Plaintiff has put forth an argument as to why the Court should find that he is a shareholder of the Firm, he has not established that point. Accordingly, the Court **denies** Plaintiff's emergency motion for appointment of a receiver.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: July 21, 2015

_____
Roland A. Cole, Justice
Maine Superior Court

6

---

| 01 | 0000003412 | BALS, LEE | | | |
|----|------------|-----------|--|--|--|
| | ONE CANAL PLAZA SUITE 600 PORTLAND ME 04101-4035 | | | | |
| | F | DONALD GREY LOWRY | PL | RTND | 08/19/2014 |

| 02 | 0000009024 | PELLEGRINI, ANTHONY D | | | |
|----|------------|----------------------|--|--|--|
| | 84 HARLOW ST PO BOX 1401 BANGOR ME 04402-1401 | | | | |
| | F | JAMES C BEARDSLEY | DEF | RTND | 09/11/2014 |
| | F | JCB CORPORATION PA | PII | RTND | 09/11/2014 |